**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF ALASKA**

RORY VAIL,

Plaintiff,

v.

SERGEANT ELMORE, SERGEANT STRAWTHER, and SUPERINTENDENT HERNANDEZ,

Defendants.

3:23-cv-00254-ACP

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**
[Dkt. 29]

Rory Vail was a pre-trial detainee in the custody of the Alaska Department of Corrections (DOC). (Dkt. 34 at 3; Dkt. 35 at 5) In March 2025, DOC restricted two phone numbers Vail used to call his mother and son after he made calls involving outside financial transactions. Vail challenged those restrictions through DOC's grievance process. He now alleges that Sergeant Elmore violated his due process rights by restricting the numbers, Sergeant Strawther violated those rights by screening his grievances, and then-Superintendent Hernandez violated them by rejecting his appeal.

Defendants moved for summary judgment, arguing that the restrictions did not violate Vail's due process rights and that, in any event, they are entitled to qualified immunity. (Dkt. 30) Vail opposed the motion, Defendants replied, and Vail filed an additional response. (Dkts. 34, 35, 36) The motion is now ripe. As explained below, it is **GRANTED**.

## I. BACKGROUND

### A. DOC restricted two phone numbers after Vail discussed outside financial transactions.

On March 8, 2025, Vail called his son at (907) 414-1719. During the call, Vail directed his son to text Vail's mother and "tell her to move 'three zero zero zero' to the app." (Dkt. 30-2 at 4:25) He then told his son not to say aloud what he was texting and identified an account named "Crygreener," registered to Mary Dick. (*Id*. at 5:10) Later in the call, Vail confirmed the amount and can be overheard discussing the transaction with another inmate. (*Id*. at 8:30)

Vail continued discussing financial transfers during later calls to his son. In the second call, he instructed his son to ask Vail's mother to go to Walgreens to complete a transfer. (Dkt. 30-3 at 1:45) Vail's son then reads the request he is sending his grandmother aloud to confirm the instructions with Vail. (*Id.* at 2:05) In a third call, Vail again instructed his son to have his mother add money and send it to the Crygreener account. (Dkt. 30-4 at 1:30)

Vail also spoke directly with his mother at (907) 795-1346 that day. (*See* Dkt. 30-5) They discussed transferring money through Cash App and making transfers at Walgreens. (Dkt. 30-5 at 1:35) In a later call, Vail's mother told him she had completed six transfers, and Vail asked her to complete additional transfers. (Dkt. 30-7 at 1:15)

DOC Policy 302.12 governs inmate financial transactions. (*See* Dkt. 30-10) It prohibits inmates from conducting banking transactions outside their Offender Trust Accounts without superintendent approval. (Dkt. 30-10 at 8) According to Security

Sergeant Jason Marvel, the prohibition on outside banking serves institutional security in two ways. (Dkt. 31 at 2-3) The prohibition discourages the formation of prison black markets, which could introduce contraband and lead to violence when debts go unpaid, and prevents extortion of other inmates and their families. (*Id.*)

DOC subsequently restricted the numbers Vail used to call his mother and son. According to the grievance records, the restrictions were imposed pursuant to Policy 302.12 because Vail engaged in outside banking. (*See* Dkt. 34-1 at 3; Dkt. 34-2 at 1, 5)

**B. Vail challenged the restrictions through DOC's grievance process.**

Vail sent requests for information to Sergeant Elmore about the restrictions and then filed grievances challenging them. (Dkt. 17-1 at 3; *See* Dkts. 34-1, 34-2) He maintained that he had not received notice of an infraction or an opportunity for a hearing before the numbers were restricted and disputed whether DOC policy permitted the restrictions. (*See* Dkt. 17-1 at 3)

Sergeant Strawther screened the grievances "as factually incredible or clearly devoid of merit." (Dkt. 24 at 7-8) Vail alleges that Strawther's screening of the grievances was improper and appealed. (Dkt. 17-1 at 4) According to the Second Amended Complaint, Superintendent Hernandez simply agreed with the screening decisions and returned the grievances without the further review Vail believed DOC policy required. (*See* Dkt. 17-1 at 4-5)

Vail's Second Amended Complaint raises three due process claims. Claim One alleges that Elmore violated due process by restricting the phone numbers without adequate procedural protections. Claim Two alleges that Strawther violated due process by

improperly screening Vail's grievances. And Claim Three alleges that Hernandez violated due process by failing to meaningfully review Vail's appeal.

Defendants move for summary judgment on all three claims. (Dkts. 29, 30)

## II. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. *Deveraux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once that showing is made, the nonmoving party must offer evidence "set[ting] forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). At summary judgment, the evidence and "facts must be viewed in the light most favorable to the nonmoving party." *Scott v. Harris*, 550 U.S. 372, 380 (2007). However, factual assertions which are "blatantly contradicted by the record" cannot be used to create a genuine issue of fact at trial. *Id.*

## III. ANALYSIS

Vail's claims concern two related events: DOC's restriction of his mother's and son's phone numbers and the procedures used to challenge those restrictions. Neither establishes a violation of the Fourteenth Amendment.

### A. The phone restrictions did not violate Vail's due process rights.

The Ninth Circuit considered a more substantial telephone restriction in *Valdez v. Rosenbaum*, 302 F.3d 1039 (9th Cir. 2002). Valdez was an Alaska pretrial detainee whose

telephone access was almost entirely eliminated for approximately four and a half months after officials became concerned that he might warn fugitive co-defendants about a superseding indictment. *Id.* at 1042-43. During that period, Valdez could telephone his attorney but otherwise could not make or receive calls. *Id.* at 1042. He challenged the restriction under both procedural and substantive due process. The Ninth Circuit rejected both theories. *Id.* at 1044-47.

Since Vail is a pre-trail detainee, the same principles resolve his claims.

**1. Vail did not have a state-created liberty interest in the phone access at issue.**

Procedural due process protects a person from being deprived of a constitutionally protected liberty or property interest without adequate process. *See Valdez*, 302 F.3d at 1045. The initial question, then, is whether Vail had a protected liberty interest in the telephone access DOC restricted.

Protected liberty interests are created by "the Due Process Clause itself and the laws of the states." *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). *Valdez* considered Alaska's prisoner telephone statute, AS 33.30.231, which provides prisoners "reasonable access" to a telephone subject to specified restrictions. *Id.* The Ninth Circuit held that the statute does not create a liberty interest protected by procedural due process because prison officials retain discretion to determine what telephone access is reasonable under the circumstances. *Id.* at 1044-45.

That holding controls here.[1] Alaska law did not give Vail a federally protected liberty interest in unrestricted access to the telephone to call his mother or son. Without such an interest, the restriction itself cannot support a procedural due process claim based on inadequate notice or lack of a hearing. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of due procedural process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.").

The same problem defeats Vail's claims against Strawther and Hernandez. Vail argues that Strawther improperly screened his grievances and that Hernandez failed to adequately review his appeal. (*See* Dkt. 17-1 at 4-5) But the Due Process Clause does not require particular procedures in the abstract. Those procedures matter constitutionally only when the government deprives a person of an interest protected by the Due Process Clause. *See Roth*, 408 U.S. at 569. Because Vail lacked a protected liberty interest in the telephone access at issue, alleged deficiencies in the procedures used to review those restrictions cannot establish a federal procedural due process violation.

Vail responds that DOC failed to follow its own policies and grievance procedures. (*See* Dkt. 34 at 4) But § 1983 remedies violations of federal rights, not a failure by state officials to comply with state law or internal agency policy. *See Cornejo v. County of San Diego*, 504 F.3d 853, 855 n.3 (9th Cir. 2007); *Russell v. Lumitap*, 31 F.4th 729, 742 (9th Cir. 2022) ("[O]f course there is no § 1983 liability for simply acting contrary to prison

---

[1] The following section describes why Vail did not have a protected liberty interest under the Due Process Clause.

policy."). Additionally, inmates lack a "constitutional entitlement to a specific prison grievance procedure." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). Whether DOC employees followed every requirement of DOC's grievance system, therefore, does not change the constitutional analysis.

Claims One, Two, and Three fail to the extent they rest on procedural due process.

**2. The phone restrictions were reasonably related to institutional security.**

Vail also argues that restricting the numbers amounted to an unconstitutional punishment. The defendants respond that while Vail could not constitutionally be punished before an adjudication of guilt, "a prison condition does not amount to a punishment if it is 'but an incident of some other legitimate governmental purpose.'" (Dkt. 30 at 8 [quoting *Bell v. Wolfish*, 441 U.S. 520, 538 (1979)]).

Here, the restrictions were not punishments. "Under the due process clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell*, 441 U.S. at 535. However, "not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Id.* at 537. Absent an expressed intent to punish, a restriction does not amount to unconstitutional punishment if it is reasonably related to a legitimate governmental objective unless it is arbitrary or purposeless, or excessive in relation to its assigned purpose. *Id.* at 538-539. Maintaining institutional security and internal order within a prison, however, is a legitimate governmental objective. *Id.* at 540.

As this Court has previously found, DOC Policy 302.12 is reasonably related to that objective. *Kone v. Elmore,* No. 3:24-cv-00230-ACP, Dkt. 82 at *6-7 (D. Alaska Aug. 18, 2026).

Policy 302.12 prohibits inmates from conducting outside banking without superintendent approval. (Dkt. 30-10 at 8) Marvel explains that unauthorized outside banking can facilitate black markets, contraband, violence arising from unpaid debts, and extortion of inmates or their families. (Dkt. 31 at 2-3) Those are legitimate institutional-security concerns.

Vail does not need to have personally engaged in contraband trafficking, extortion, or violence for DOC to enforce a policy designed to prevent those risks. Nor must Defendants prove that his particular transfers culminated in criminal activity. The relevant question under *Bell* is whether the restriction bears a reasonable relationship to the legitimate governmental purpose asserted for it. 441 U.S. at 538-39.

It does. The recorded calls reflect Vail directing his son and mother concerning financial transfers outside his inmate trust account. And the grievance records identify outside banking as the reason DOC restricted the numbers. (Dkt. 34-1 at 3; Dkt. 34-2 at 1, 5) Restricting the particular numbers being used to facilitate outside transactions directly addressed conduct covered by the policy. Since the policy is related to legitimate institutional security concerns, Vail must show that the restrictions themselves are unrelated to their stated purpose.

Vail argues that the restrictions were punishment because DOC was "targeting" him. (Dkt. 34 at 3) That argument would have some weight if a facially neutral security policy

is being selectively used as a pretext to punish a particular detainee. But Vail has not produced evidence from which a reasonable factfinder could conclude that happened here. The record instead ties the restrictions to calls which explicitly discuss outside financial transactions.

Nor were the restrictions excessive in relation to their purpose. In *Valdez*, officials prevented a pretrial detainee from making or receiving any non-attorney telephone calls for approximately four and a half months because they feared he might warn fugitive co-defendants. 302 F.3d at 1042. The Ninth Circuit held that the restriction did not constitute punishment because it was reasonably related to legitimate security concerns. *Id.* at 1045-47. Here, DOC restricted two particular numbers after those numbers were used in calls involving outside financial transactions. The restrictions were considerably narrower than the restriction upheld in *Valdez* and directly addressed the specific means through which DOC believed the prohibited transactions were being facilitated.

The phone restrictions therefore did not violate Vail's substantive due process rights.

**B. In any event, Defendants are entitled to qualified immunity.**

Even if Vail could establish a constitutional violation, Defendants would be entitled to qualified immunity.

Government officials sued under 42 U.S.C. § 1983 are entitled to qualified immunity unless their conduct violated a federal statutory or constitutional right and that right was clearly established when the challenged conduct occurred. *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009). For the right to be clearly established, the law must be "sufficiently clear [so] that that every reasonable official would have understood that what

he is doing violates that right." *Zorn v. Linton*, 607 U.S. 568, 572 (2026) (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam)). This means that the relevant precedent must place the constitutional question beyond debate by defining the right with enough specify that "every reasonable official would interpret it to establish the rule the plaintiff seeks to apply." *Id.* (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). Thus, officials will receive qualified immunity "unless they could have 'read the relevant precedent beforehand and 'know[n]' that it proscribed their specific conduct." *Id.* (alteration original) (quoting *City and County of San Francisco v. Sheehan*, 575 U.S. 600, 616 (2015)).

The question therefore is not whether due process protects pretrial detainees in the abstract. It is whether, in March and April 2025, existing precedent clearly established that Defendants could not restrict these phone numbers, screen Vail's grievances challenging those restrictions, or reject his appeal.

No authority cited by Vail establishes such a right. The most pertinent controlling authority points the other way.

*Valdez* held that AS 33.30.231 did not create a protected liberty interest and upheld a restriction eliminating all of an Alaska pretrial detainee's non-attorney telephone access for several months because it was reasonably related to a legitimate security objective. 302 F.3d at 1045. Against that backdrop, a reasonable correctional official would not have understood the relevant precedent to prohibit restricting particular phone numbers after those numbers were used in calls involving financial transactions prohibited by DOC policy.

The same conclusion follows for Strawther and Hernandez. Vail identifies no authority clearly establishing that screening a grievance concerning such a restriction, or affirming that screening decision on appeal, violates the Due Process Clause. Given *Valdez*'s holding that Alaska law did not create a protected liberty interest in the underlying telephone access, existing precedent did not place the constitutionality of their conduct beyond debate.

The recent decision in *Kone v. Elmore* is consistent with that conclusion. There, another Alaska inmate challenged restrictions on family members' phone numbers arising from alleged violations of DOC's outside-banking and telephone policies. *See* No. 3:24-cv-00230-ACP, Dkt. 82 (D. Alaska Aug. 18, 2026). The claim in *Kone* arose principally under the First Amendment, and the decision postdates the conduct here, so *Kone* does not itself establish what the law required in 2025. But its review of the existing authority reached the same basic conclusion: "there is no case specifying that a prison cannot restrict a phone number after the inmate discusses financial transactions over the phone." *Id.* at *15.

*Valdez* was the controlling authority when Defendants acted, and Vail identifies no case clearly establishing that their conduct violated due process. Defendants are therefore entitled to qualified immunity.

## IV. CONCLUSION

Defendants' Motion for Summary Judgment at Docket 29 is **GRANTED**.